[Cite as *State v. Caldwell*, 2014-Ohio-4486.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. John W. Wise, J. |
| -vs- | : | |
| | : | |
| CALVIN CALDWELL, JR. | : | Case No. 14CA22 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                 Pleas, Case No. 2013-CR-0293




JUDGMENT:                        Affirmed




DATE OF JUDGMENT:                October 7, 2014




APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JOHN C. NEIFT                             JAMES R. WILLIS
38 South Park Street                      420 Lakeside Place
Mansfield, OH  44902                      323 Lakeside Avenue, NW
                                          Cleveland, OH  44113

*Farmer, J.*

{¶1} On May 10, 2013, the Richland County Grand Jury indicted appellant, Calvin Caldwell, Jr., on two counts of trafficking in cocaine in violation of R.C. 2925.03. Count 1 pertained to acts that occurred on November 21, 2012, and Count 2 pertained to acts that occurred on November 28, 2012. The two counts involved the sale of cocaine to a confidential informant, Duvall Williams.

{¶2} A jury trial commenced on February 24, 2014. The jury found appellant guilty of Count 1 and not guilty of Count 2.

{¶3} On March 4, 2014, appellant filed an application for bail pending appeal. A sentencing hearing was held on March 6, 2014 wherein the trial court denied appellant's motion for bail. By judgment entry filed March 7, 2014, the trial court sentenced appellant to thirty months in prison.

{¶4} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶5} "DUE PROCESS IS DENIED, ALONG WITH THE RIGHTS OF AN ACCUSED TO EQUAL PROTECTION OF THE LAW, WHEN THE COURT FAILED TO MAKE AND ARTICULATE EXPRESS FINDINGS (ORAL OR OTHERWISE) BEFORE IT DENIED BAIL PENDING APPEAL. WITH THIS BEING SO THE TRIAL COURT ERRED, AS DID THIS COURT, WHEN (FOR AUGHT THAT APPEARS) IT SUMMARILY, AND WITHOUT ANY EXPLANATION WHATSOEVER, DENIED BAIL."

II

{¶6} "THE COURT ERRED IN ALLOWING, AND THUS ENABLING THE STATE, UNDER THE GUISE OF REFRESHING RECOLLECTION, TO SUBSTITUTE INADMISSIBLE HEARSAY EVIDENCE EXTRICATED FROM A PRIOR WRITTEN STATEMENT MADE BY A STATE'S WITNESS AS SUBSTANTIVE PROOF OF THE GUILT OF THE ACCUSED."

III

{¶7} "DUE PROCESS WAS VIOLATED AND THE ACCUSED WAS DEPRIVED OF A FAIR TRIAL WHEN THE TRIAL COURT IMPROPERLY AND FAULTILY ADVISED AN ARGUABLY RECALCITRANT STATE'S WITNESS (WHO HAD FORTHRIGHTLY ASSERTED THE FIFTH AMENDMENT AND WHO COMPLAINED HIS COUNSEL WAS NOT PRESENT) THAT HE WAS BEING REQUIRED TO TESTIFY, AND TO TELL THE TRUTH, OR BE HELD IN CONTEMPT FOR REFUSING TO DO SO."

IV

{¶8} "THE COURT ERRED WHEN IT DENIED THE DEFENSE'S VARIOUS OBJECTIONS TO QUESTIONS PROPOUNDED BY THE PROSECUTOR THAT IMPROPERLY SUGGESTED, AND OTHERWISE INSINUATED, THAT SOMEONE 'HAD GOTTEN TO' ITS CHIEF WITNESS TO CHANGE HIS TESTIMONY (*I.E.*, HE HAD BEEN, EITHER, BRIBED, COERCED, OR EVEN THREATENED OR THE LIKE)."

V

{¶9} "THE COURT ERRED AND DUE PROCESS WAS VIOLATED WHEN THE COURT LITERALLY COMPELLED A STATE'S WITNESS (WHO HAD

ASSERTED THE FIFTH AMENDMENT AND FURTHER ADVISED THE COURT HIS COUNSEL WAS NOT PRESENT) TO TESTIFY, WHICH HAPPENED AFTER THE WITNESS WAS SENTENCED FOR CONTEMPT FOR AN INDEFINITE AND UNSPECIFIED PERIOD OF TIME."

I

{¶10} Appellant claims the trial court erred in denying bail pending appeal without express findings.  We disagree.

{¶11} Continuing bond pending disposition of the case on review lies in a trial court's sound discretion.  Crim.R. 46(H).  In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.  *Blakemore v. Blakemore,* 5 Ohio St.3d 217 (1983).

{¶12} Appellant's March 4, 2014 application for bail set forth fourteen averments for consideration.  In its March 6, 2014 response, the state pointed out appellant's lengthy criminal history and various failures to appear and bench warrants.  Attached to the response was State's Exhibit B, Arrestee Search Information.  Appellant was involved in a pending forfeiture action in the United States District Court for the Southern District of Florida (State's Exhibit A), and did not have any ties to Richland County.  At the conclusion of the March 6, 2014 sentencing hearing, the trial court denied bail, stating the following (T. at 285):

THE COURT: Thank you.  In looking through Mr. Caldwell's arrest information from the Richland County Jail, it goes back to '76.  I see six - -

let me count them. I want to make sure I get them all. One, two, three, four, six different times since '76 that warrants were issued for him for failure to appear. That does trouble me in giving him a bond, so at this time I'll be denying his request for appellate bond. That's it. We're done.

{¶13} On March 24, 2014, appellant filed an application for bail pending appeal in this court, which was denied on April 3, 2014. A subsequent motion for reconsideration was denied on May 12, 2014.

{¶14} Apart from the mootness of this argument given this court's decision on bond, we find the record establishes sufficient findings for the denial of appellate bond.

{¶15} Assignment of Error I is denied.

## II, III, IV, V

{¶16} These assignments center on the testimony of the confidential informant, Duvall Williams. Appellant argues the state improperly used Evid.R.611(C) to refresh Mr. Williams's memory, the trial court did not permit Mr. Williams to claim his Fifth Amendment right against self-incrimination or to have his attorney present and forced him to testify, and permitted questioning by the state suggesting "someone had gotten" to Mr. Williams. We disagree.

{¶17} Because these issues are intertwined, we will address them collectively.

{¶18} The admission or exclusion of evidence lies in the trial court's sound discretion. *State v. Sage,* 31 Ohio St.3d 173 (1987); *Blakemore, supra.*

{¶19} Evid.R. 611 governs mode and order of interrogation and presentation. Subsection (C) states the following:

**(C) Leading questions.** Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony.  Ordinarily leading questions should be permitted on cross-examination.  When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.

{¶20}  The state argues even if there was error, it was harmless given that Mr. Williams's testimony was cumulative evidence.  Harmless error is described as "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."  Crim.R. 52(A).  Overcoming harmless error requires a showing of undue prejudice or a violation of a substantial right.

{¶21}  After a lengthy discussion outside the hearing of the jury, Mr. Williams testified to direct questions asked by the state.  T. at 175-180.  Mr. Williams agreed that he was a confidential informant on November 21, 2012.  T. at 180.  When asked about appellant's participation in the drug buy on said date, Mr. Williams denied any conversation with appellant about the purchase of cocaine.  T. at 181-183.  Mr. Williams denied ever talking to appellant about it.  *Id.*  The state then proceeded to impeach its own witness by using a prior statement given by Mr. Williams to Mansfield Police Detective Steve Blust and asking Mr. Williams to read the statement.  T. at 183-185.

{¶22} It is important to note that Mr. Williams was called by the state. Although the "voucher" rule has been abolished in Ohio, Evid.R. 607 governs impeachment. Subsection (A) states the following:

> The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage. This exception does not apply to statements admitted pursuant to Evid. R. 801(D)(1)(a), 801(D)(2), or 803.

{¶23} As the record reveals, Evid.R. 801(D)(1)(a) and (2) and 803 do not apply to an unsworn prior statement subject to cross-examination or an admission by a party-opponent or a recorded recollection. The record, although it demonstrates that Mr. Williams did not want to testify or to even be there, does not affirmatively show "surprise" by the state.

{¶24} Prior to any testimony other than preliminary questions and answers, Mr. Williams told the prosecutor he wanted to plead the "Fifth" (T. at 174-175):

> Q. Okay. I understand you don't want to be here. Would that be fair?
>
> A. I want to plead The Fifth.
>
> Q. I asked you if you understand that you don't want to be here? Do you agree you don't want to be here?

A. I don't want to be here.

Q. Okay.  With that said, what I want to ask you is did you do an undercover buy for Metrich on November 21st, 2012?  I know this is hard for you, sir.

MR. WILLIS: Objection.

THE COURT: Overruled.

A. I don't want to.

Q. Who got to you, sir?

A. Nobody get to me.

Q. Somebody must have got to you.

A. Nobody get to me.

Q. Did you do an undercover buy for Metrich on November 21st, 2012?

A. I don't want to talk.


{¶25}  The trial court then excused the jury and Mr. Williams stated he wanted to plead the "Fifth" and did not want to testify.  T. at 176.  The trial court engaged Mr. Williams in the following dialogue (T. at 176-177):


THE COURT: Your job as a witness is to tell the truth and answer the questions.  If you have a Fifth Amendment right, if you're being accused of something, then that would be one thing.  But my

understanding is you're not charged in this case. You weren't charged with anything to do with drugs.

MR. WILLIAMS: Well, I don't want to - - I mean, I don't want to - - I just don't want to testify.

THE COURT: Well, in this case you have to testify, because there's no legitimate reason not to. If you don't testify, then the Court has to hold you in contempt, which means go into the county jail in addition to the prison time you're already doing. So what do you want to do, Mr. Williams? The choice is yours.

MR. WILLIAMS: How long do I have to be in contempt for?

THE COURT: For refusing to testify without a legitimate reason not to. You're not being accused of anything.

{¶26} Defense counsel suggested Mr. Williams needed an attorney and Mr. Williams stated he had an attorney. T. at 177-178. The trial court then ruled as follows (T. at 179-180):

THE COURT: Don't argue amongst yourselves. My ruling is you're not being accused of anything. So my decision is you're going to be ordered to testify. If you choose not to testify and tell the truth, then you can be held in contempt of court.

MR. WILLIAMS: I ain't got nothing to say.

THE COURT: Are you refusing to testify?

MR. WILLIAMS: I don't have nothing to say.

THE COURT: Does that mean you're refusing to testify?

MR. WILLIAMS: I didn't ask them to come get me from prison.

THE COURT: I know that. You weren't asked - - you didn't want to be a witness. I understand that. But that's - - you know, you are a witness now, so the question is - -

MR. WILLIAMS: All right. But this is - - I got the right - - I got the right to not come up here. I know all about this stuff. I got the right to not come up here and I don't even have my attorney.

THE COURT: My question for you is, are you refusing to testify or not? That's all I need to know.

MR. WILLIAMS: I don't want to testify.

THE COURT: I take that as a refusal. I'm going to hold you in contempt of court. Take him back down to the jail. Bring them back in and bring the folks back in.

{¶27} The trial court was about to have Mr. Williams removed, when a discussion was held off the record. T. at 180. Mr. Williams was admonished to tell the truth and the direct examination by the state commenced. *Id.*

{¶28} Without the discussion off the record, we have no indication as to why Mr. Williams began to testify. We can presume he gave up his Fifth Amendment claim and right to an attorney.

{¶29} Under the doctrine of "invited error," it is well settled that "a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." *State ex rel. Smith v. O'Connor,* 71 Ohio St.3d 660, 663, 1995-Ohio-40, citing *State ex rel. Fowler v. Smith,* 68 Ohio St.3d 357, 359, 1994-Ohio-302. *See, also, Lester v. Leuck,* 142 Ohio St. 91 (1943), paragraph one of the syllabus. As the Supreme Court of Ohio stated in *Lester* at 92-93, quoting *State v. Kollar,* 95 Ohio St. 89 (1915):

'The law imposes upon every litigant the duty of vigilance in the trial of a case, and even where the trial court commits an error to his prejudice, he is required then and there to challenge the attention of the court to that error, by excepting thereto, and upon failure of the court to correct the same to cause his exceptions to be noted.

'It follows, therefore, that, for much graver reasons, a litigant cannot be permitted, either intentionally or unintentionally, to induce or mislead a court into the commission of an error and then procure a reversal of the judgment for an error for which he was actively responsible.'

{¶30} We question the trial court's decision not to afford Mr. Williams an attorney when it was clear from the record that Mr. Williams was concerned by the possibility of perjury. However, we find we cannot conclusively say it was error.

{¶31} As we noted, the state's method of impeaching Mr. Williams and the method used to refresh his recollection were incorrect and constitute error. We must

now examine the record to determine if the errors were harmless and mainly cumulative evidence.

{¶32}  Mr. Williams's "impeached testimony" was that he had asked appellant in person how much for a "zip" (ounce) of cocaine and appellant answered $1,200.00.  T. at 181-182.  This was presented via Mr. Williams's statement to Detective Blust.  T. at 181-184.  The statement indicates prior to this encounter, Mr. Williams engaged in a couple of controlled telephone calls to appellant's phone number.  T. at 184-185.

{¶33}  The state's inquiry was whether the set-up of the controlled drug buy was done through appellant.  The testimony of Detective Blust, who was present during the numerous back-and-forth telephone calls between appellant's phone and Mr. Williams's phone, established that Mr. Williams received a call-back from appellant's number and appellant told Mr. Williams where to go for the drug buy.  T. at 38-41.  Mr. Williams was wired with audio and video.  T. at 43.  The controlled drug buy by Mr. Williams on November 21, 2012 was overheard by Detective Blust, Mansfield Police Detective Perry Wheeler, and Ohio State Highway Patrol Trooper James Tidaback.  T. at 36, 43, 114, 117, 163, 169.  Following the drug buy, Mr. Williams returned to Detective Wheeler's vehicle with the cocaine from the buy.  T. at 44-45, 119.  The audio and video recordings were admitted and played for the jury.  T. at 52, 55; State's Exhibits 3 and 4.  Appellant is on the video during the drug buy and is observed talking to Mr. Williams.  T. at 53-54.  Appellant is identified in court by Detectives Blust and Wheeler as the individual on the video.  T. at 54, 116-118.  The audio reveals Mr. Williams talking to appellant about prices for the cocaine.  T. at 55.  Appellant then calls back to a third party, Burke Webb.  T. at 55-57, 118.  On the video, Mr. Webb is observed handing the

cocaine to Mr. Williams. T. at 56, 117-118. A second controlled drug buy was attempted by Mr. Williams to appellant's telephone number and appellant was identified as being on the phone. T. at 58-59.

{¶34} We concur with the state's position that any error was harmless. The audio and video recordings, the observations of Detectives Blust and Wheeler and Trooper Tidaback, and the identifications of appellant as the individual who set-up the drug buy and participated in its direction are sufficient alone to establish proof beyond a reasonable doubt. The testimony of Mr. Williams was cumulative.

{¶35} Lastly, appellant argues the state improperly asked Mr. Williams, "Who got to you, sir?" T. at 175, 185, 201. No objections were made to the first and third reference. T. at 175, 201. Defense counsel objected to the second reference, and the trial court determined it was already asked and answered, "[s]o let's move on." T. at 186. Although we find the questions constitute error, we do not find they rise to the level of "a showing of undue prejudice or a violation of a substantial right" in the context of the entire trial. *State v. Lott,* 51 Ohio St.3d 160 (1990); *Darden v. Wainwright,* 477 U.S. 168 (1986). Given all of the evidence presented, Mr. Williams's testimony was cumulative.

{¶36} Assignments of Error II, III, IV, and V are denied.

{¶37} The judgment of the Court of Common Pleas of Richland County, Ohio is hereby affirmed.

By Farmer, J.

Gwin, P.J. and

Wise, J. concur.

SGF/sg 916